571 So.2d 831 (1990)
STATE of Louisiana, Plaintiff-Appellee,
v.
Lubin DOREMUS, Defendant-Appellant.
No. CR90-509.
Court of Appeal of Louisiana, Third Circuit.
December 12, 1990.
Edward J. Lopez, Opelousas, for defendant-appellant.
Morgan J. Goudeau, III, Dist. Atty., Opelousas, for plaintiff-appellee.
*832 Before DOMENGEAUX, C.J., and DOUCET and KNOLL, JJ.
KNOLL, Judge.
Defendant, Lubin Doremus, was charged by bill of information on January 26, 1989, with forcible rape in violation of LSA-R.S. 14:42.1. On November 15, 1989, a twelve person jury found defendant guilty of attempted forcible rape in violation of LSA-R.S. 14:27 and LSA-R.S. 14:42.1. After defendant's motion for post verdict judgment of acquittal and motion for new trial were denied, defendant was sentenced on February 2, 1990, to 12 years at hard labor with the first year to be served without benefit of probation, parole, or suspension of sentence. On appeal, Doremus contends that the evidence was insufficient to support a jury verdict of guilty.

FACTS
On the evening of Friday, December 9, 1988, a female victim, sixteen years of age, was abducted as she approached the front door of a classmate's house in Eunice, Louisiana. A man that she later identified as the defendant, grabbed her from behind and an unidentified accomplice placed duct tape over her eyes. Then, in a foreign accent, defendant told the victim "I be watching when you go to school" and pulled her to a parking lot directly behind her classmate's house.
According to the victim, defendant pinned her arms to her chest with his arms and "had sex" with her for approximately ten minutes. However, the victim also testified that she did not feel defendant penetrate her. The victim stated that she was struggling on the concrete trying to get away during the ten minute period. Then, defendant told the victim that "You tell anybody and I'll kill your family." The accomplice warned defendant that someone was coming and defendant jerked the duct tape from the victim's face. After a few seconds, the victim regained her sight and caught a glimpse of defendant's face and his clothinga yellow shirt and a brown leather jacket.
The victim took about fifteen minutes to "fix herself up" and then walked to her friend's house. When she arrived at her friend's house, she immediately bathed. She told no one that night of the incident, because of the death threat to her family.
The following Tuesday morning while waiting at the bus stop, the victim saw defendant wearing the same yellow shirt and brown leather jacket. When she arrived at school, the victim told her firsthour teacher about the Friday night incident. Her teacher contacted the victim's mother and the police. The victim later refused to be examined by a physician. Defendant has been diagnosed as having the acquired immunity deficiency syndrome (AIDS). Because defendant has AIDS, the victim must now be tested for AIDS every six months for the next ten years. At the time of trial, the victim had been tested twice for AIDS exposure; the results of the tests were negative.
The victim's friend testified that she and the victim are life-long friends. She stated that the victim acted normally on the Friday night of the offense, except for bathing immediately after she had arrived. The victim's friend also saw defendant near the school bus stop wearing the yellow shirt and brown leather jacket on the Tuesday morning that the victim reported the rape to her school teacher.
The victim's mother testified that when her daughter returned home on Saturday, she stayed in her room and cried all weekend. The mother repeatedly asked her daughter what was wrong, but her daughter's only answer was that her head was hurting. The mother was dumbfounded about why her daughter was so upset.
Ronnie Valenta, an officer from the Eunice Police Department, testified that when defendant was arrested he was wearing the same yellow shirt and brown leather jacket that was mentioned in the victim's description. Valenta testified that defendant refused to talk to the police on the day of his arrest.
Defendant's girlfriend, Denetra Papillion, her two children, Ray Papillion and Felicia Papillion, and a friend, Myrtle Stevens, testified on behalf of defendant.
*833 Denetra Papillion testified to the following facts. She has known defendant for five years and was dating him at the time of the attempted rape. She stayed at defendant's home from Wednesday, December 7 until Sunday, December 11. On Friday, December 9, she left work at approximately 6:00 o'clock p.m. and drove directly to defendant's house. About 7:00 o'clock that evening, defendant, Denetra, and her two children rode to Myrtle Stevens' house and played dominos until midnight. Denetra also testified that defendant cannot pick up heavy items or make a fist with his left hand. She explained that three of his fingers on his left hand do not bend and are numb.
Ray Papillion, eleven years of age, testified that he rode home from school with defendant at approximately 2:50 Friday afternoon and remained at defendant's home until his mother returned at 6:30 that evening. Ray stated that defendant played cards with him all afternoon and never left the house.
Felicia Papillion, nine years of age, testified that she rode with defendant and Ray from her mother's house shortly after 3:00 o'clock Friday afternoon to defendant's house. According to Felicia, she, Ray, and defendant played cards all afternoon. She stated that the defendant never left the house from the time they arrived until her mother returned from work that evening.
Lastly, Myrtle Stevens testified that defendant, Denetra, and her two children rode to her house shortly before dusk on Friday evening and remained at her house until after midnight.

SUFFICIENCY OF THE EVIDENCE
The constitutional standard for testing the sufficiency of the evidence, as set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based upon proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements beyond a reasonable doubt.
To commit an attempted forcible rape, an offender must have the specific intent to engage in anal or vaginal sexual intercourse without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances wherein the victim reasonably believes that such resistance would not prevent the act. LSA-R.S. 14:27; LSA-R.S. 14:42.1.
Louisiana jurisprudence firmly establishes that the testimony of the victim alone is sufficient to prove the essential elements of attempted forcible rape State v. Orgeron, 512 So.2d 467 (La.App. 1st Cir.1987), writ denied, 519 So.2d 113 (La. 1988); State v. Magee, 491 So.2d 454 (La. App. 1st Cir.1986).
As a reviewing court, we cannot secondguess the credibility determinations of the trier of fact, since the scope of our review is limited to questions of law only. La. Const. art. 5, Section 10 B.
In the case sub judice, the victim testified at length about the circumstances of her abduction and attempted rape. She stated that she was grabbed from behind by two men, one of which she later identified as defendant, and was pulled to a vacant parking lot. At the parking lot, defendant held her down, partially disrobed her and for ten minutes attempted to rape her. At trial, she unequivocally identified defendant as her attacker based upon his face, clothing and heavy foreign accent. Her mother testified that following the attack, the victim remained in her room and cried the entire weekend. Both her classmate and Officer Valenta corroborated her testimony regarding defendant's clothing.
After our careful review of the record, we conclude that any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the crime of attempted forcible rape beyond a reasonable doubt.
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.