682 So.2d 777 (1996)
STATE of Louisiana, Appellee,
v.
Walter HENTON, Appellant.
No. 28576-KA.
Court of Appeal of Louisiana, Second Circuit.
September 25, 1996.
*778 Samuel H. Thomas, Tallulah, for Appellant.
Richard Ieyoub, Attorney General, James Caldwell, District Attorney, James T. Phillips, Assistant District Attorney, for Appellee.
Before NORRIS and STEWART, JJ., and PRICE, J. Pro Tem.
STEWART, Judge.
A jury found the defendant, Walter Henton, guilty of Distribution of Cocaine, a violation of La. R.S. 40:967 A(1). The trial court sentenced Henton to serve eighteen years imprisonment at hard labor with credit for time served. On appeal the defendant argues two assignments of error. For these reasons, we affirm the conviction and sentence.

FACTS
On January 15, 1993, Tallulah Police Department narcotics agents (TPD) were joined by two Vernon Parish Leesville Drug Task Force officers, Larry Fulks (Fulks) and Michael Gore (Gore). The officers joined as part of an undercover operation to make drug purchases in known drug trafficking areas. At the beginning of the operation, the TPD had not targeted any suspects for investigation. The officers traveled in two cars. One car was equipped with a video camera to record the transactions. In this car, the officers made buys. The second car was used for surveillance during the transactions. Lieutenant Willie Joe Turner (Turner), Chief Williams and Major Brandly, the assistant chief, traveled in the surveillance car.
Near 8:00 p.m., the two Vernon Parish officers and one disguised Tallulah officer drove to a suspected drug trafficking area in the video equipped car. The officers attempted to purchase crack cocaine. Gore handled the "negotiations" during the deals and Fulks was the driver. Patrolman James Guyton rode in the backseat of the vehicle providing directions and identification of suspects when possible.
As the officers neared the store parking lot of Hattaway's, several individuals approached and offered to sell twenties ($20 worth of crack cocaine). Henton was among those individuals. The defendant approached the car and asked who was in the vehicle. Gore stated that only he and his "Pawpaw" (meaning Fulks) were in the car. Henton instructed the officers to drive down the street and stop the car, all of which was recorded on the surveillance video. The officers drove the car west on Levee St. to a Conoco station parking lot. They stopped in a well-lit area where defendant showed the officers a rocklike substance. Gore commented to the defendant that he thought the rock was small and asked Fulks his opinion regarding the size. Officer Fulks examined it, and the defendant placed the "rock" in Officer Gore's hand in exchange for $20.00. Gore placed the "rock" in his jacket pocket. Immediately after this purchase from the defendant, the officers purchased an additional "rock" from a different individual. They returned to their "staging area" to review the video tape and turn evidence over to the case officer, Lt. Willie Turner. Patrolman Guyton identified Henton before viewing the video tape. The other TPD officers, previously acquainted with Henton, identified the defendant after viewing the video.
Officer Gore transferred the evidence obtained during the purchases to Turner and identified the evidence obtained from each sale. After Turner received the evidence, he placed it in an evidence bag with a label that indicated the time of the sale, the time he received the evidence, the date, and the number of the transaction.
At his trial, Henton did not testify or present any evidence on his behalf. The jury found the defendant guilty of distribution of cocaine

Discussion
Assignment No. 1: Whether after reviewing all of the evidence in the light most favorable to the state, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
Henton alleges that the evidence presented was not sufficient to prove that he distributed cocaine. The state could not attribute to him the substance that tested positive for *779 cocaine. Conversely, the State alleges it presented sufficient evidence to prove the defendant knowingly and intentionally sold crack cocaine to undercover officers.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La. App. 2d Cir.), writ denied, 605 So.2d 1089 (1992).
The offense of distribution of cocaine is defined in pertinent part in LSA-R.S. 40:967(A):
Except as authorized by this Part or by Part VII-B of Chapter 5 of Title 40 of the Louisiana Revised Statutes of 1950, it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute or possess with intent to produce, manufacture, distribute or dispense, a controlled dangerous substance classified in Schedule II.
Cocaine is a Schedule II controlled dangerous substance. See La. R.S. 40:964, Schedule II(A)(4). State v. Williams, 618 So.2d 606 (La.App. 2d Cir.1993).
The crime of distribution is the knowing and intentional distribution of a controlled dangerous substance. State v. Fairley, 25,951 (La.App.2d Cir. 5/4/94), 645 So.2d 213. Therefore, to convict the defendant of this offense, the state must prove that Walter Henton did knowingly and intentionally distribute cocaine.
After review of the record we find that the testimony and evidence presented was sufficient for a rational trier of fact to find the Henton guilty. The three officers in the car equipped with the surveillance video (Gore, Fulks, and Guyton) identified Walter Henton as one of the individuals who sold them a rock of cocaine.
During Officer Gore's testimony, the State played the video tape for the jury. Gore testified that an individual later identified as Henton approached the car. The officer said that he exchanged with the defendant $20.00 for cocaine. Gore identified Henton in court as the person who sold him the cocaine.
Fulks testified he saw Henton with the cocaine in his hand. Additionally, Fulks stated he saw the exchange between Gore and the defendant with the defendant receiving $20.00 for the cocaine rock. Fulks did not learn the name of the defendant until TPD officers reviewed the video tape; however, during his testimony, Fulks identified the defendant in court as the seller of the cocaine rock.
Patrolman Guyton testified he was in the vehicle at the time of the drug purchase and that he saw the defendant approach the car. He was able to hear the transaction, but was unable to see the transfer of the cocaine for the money because he was sitting in the backseat of the car.
The surveillance video camera recorded the entire transaction. After viewing the video tape of the transaction, Turner and Brandly also identified Henton as the person who sold Gore and Fulks the drugs. Guyton, Lt. Turner, and Major Brandly were familiar with the defendant before the sale. After negotiating the sell, the undercover officer exchanged a $20.00 bill for the rock of cocaine. The officer placed the suspected drugs in his pocket. After making another purchase, the officers went to the "staging area," where Gore transferred the evidence to the case officer, Lt. Turner.
Lt. Turner testified that he received the evidence from Gore and that he immediately placed it in an evidence envelope with the time of the transaction, the time he received it, his initials, and a transaction number. The transaction number corresponded with the particular purchase recorded on the surveillance video. Turner identified the pouch containing the cocaine rock as the one he had in his possession before transferring it to the West Monroe Crime Lab. An evidence transfer sheet was admitted into evidence identifying the item submitted for analysis to the crime lab. Turner remained in charge of *780 the evidence, which was placed in a locked desk drawer until transported to the crime lab and released to Linda Armstrong. Turner said that there was no doubt that the substance submitted to Armstrong was sold to Gore by the defendant.
Linda Armstrong (Armstrong) testified during the trial. Armstrong qualified as an expert witness and criminalist in the field of identification of controlled dangerous substances. Through her analysis of the evidence the results indicated that the substance contained cocaine. The lab report of Armstrong's findings from the analysis of the submitted substance was admitted into evidence. In addition to her testimony, and the lab report, Armstrong identified several evidence transfer receipts indicating when she received the evidence from Turner, and when the evidence was transferred back to the TPD.
Henton contends that there was a break in the chain of custody of the evidence. Therefore, it could not properly be shown that the evidence presented was attributable to him since his name was not on the original evidence envelope.
Demonstrative evidence must be properly identified before it can be admitted at trial. Accordingly, it must be established that it is more probable than not that the object is the one connected with the crime. Identification may be accomplished through the chain of custody, by tracing the object from the time it was seized to the time it was offered in evidence. State v. Sweeney, 443 So.2d 522 (La.1983); State v. Landry, 388 So.2d 699 (La.1980), cert. denied, 450 U.S. 968, 101 S.Ct. 1487, 67 L.Ed.2d 618 (1981). A defect in the chain of custody goes to the weight of the evidence rather than to its admissibility. State v. Jackson, 629 So.2d 1374 (La.App. 2d Cir.1993), writ denied, 94-0201 (La.05/06/94), 637 So.2d 1046.
In State v. Hamilton, 594 So.2d 1376 (La. App. 2d Cir.1992), the defendant contended that the evidence from several drug sales were commingled. It could not be determined that the drugs analyzed were actually purchased from him. This court determined that in order to introduce demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is connected with the case. Again, lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than to its admissibility. Ultimately, connexity is a factual matter for determination by the trier of fact.
In this case, the testimony of the law enforcement officials clearly established a proper foundation for the introduction of the cocaine. Officers Gore and Turner were certain that their method of securing and labeling the cocaine was sufficient to ensure that the cocaine presented at trial was the same that had been purchased from the defendant. The procedures employed for securing the evidence prior to transfer to the crime lab appear adequate. Turner and one superior officer were the only individuals who had access to the locked desk. It was also shown that the evidence was properly transferred from Turner to Armstrong at the crime lab. The defendant's argument to the contrary merely affects the weight of the evidence and not its admissibility.
Therefore, we conclude that there was sufficient evidence for a rational trier of fact to find that the defendant did, in fact, knowingly and intentionally distribute cocaine to undercover officers.
This assignment is without merit.
Assignment No. 2: Whether the sentence imposed is excessive and shows little regard for the sentencing guidelines of the Code of Criminal Procedure, Article 894.1.
The defendant argues that the sentence was excessive because he had only one prior felony conviction and no history of drug activity. Also, defendant alleges that the trial judge did not adequately consider the sentencing guidelines.[1] The state contends that based on defendant's extensive criminal history, the sentence is not excessive.
*781 La.C.Cr.P. art. 881.1 precludes the state or defendant from raising an objection to the sentence or from urging any grounds not raised in a motion to reconsider sentence on appeal or review. Because the defendant failed to move timely for reconsideration, he is barred from attacking his sentence on appeal. State v. Bryant, 607 So.2d 11 (La. App. 2d Cir.1992), writ denied, 92-3082 (La.2/25/94), 632 So.2d 760. Further, he may not now challenge the sentence as being excessive. State v. Jackson, 622 So.2d 1224 (La.App. 2d Cir.1993). We do not read the Louisiana Supreme Court's opinion in State v. Mims, 619 So.2d 1059 (La.1993), as having obviated the statutory requirement that a motion to reconsider sentence be filed in order to preserve a claim of excessive sentence for appellate review. State v. Jackson, supra. However, even if we were to question the constitutionality of defendant's sentence, we find it is commensurate with the crime and neither shocks the sense of justice nor constitutes a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980).
In excessive sentence assignments, this court recognizes the wide discretion of the trial court and requires a manifest abuse of discretion before setting aside a sentence. State v. Square, 433 So.2d 104 (La.1983); State v. Madison, 535 So.2d 1024 (La.App. 2d Cir.1988); State v. Norrell, 614 So.2d 755 (La.App. 2d Cir.1993). When a trial judge sentences within the designated sentence range on the sentencing grid, he need only put on the record the sentence, the proper grid cell for the sentence imposed, and how he determined it was the proper cell to be used. La. S.G. § 201(B) and (C). State v. Barnes, 607 So.2d 872 (La.App. 2d Cir.1992).
During the defendant's sentencing, the trial judge indicated he relied on information in the defendant's presentence investigation report (PSI) to determine the eighteen-year sentence. According to the PSI, the defendant is classified as a third felony offender with numerous misdemeanor arrests and convictions. Defendant's criminal record placed him in the 2-A grid cell. The recommended penalty range for this grid cell is 210-240 months. The defendant's eighteen-year sentence is only six months above the recommended minimum.
The defendant's sentence is not excessive as it is within the recommended range for an offender of his criminal history. It neither shocks the sense of justice nor constitutes a purposeless and needless infliction of pain and suffering.
This assignment is without merit.
Errors Patent
Several errors patent are noted.
First, as part of the defendant's sentence a fine was imposed. The sentencing transcript indicates the amount of the fine as "$5000,00.00." The 1993 penalty range for this offense allows a maximum fine of $15,000.00. The bill of information, and the minutes of court, indicate that the fine was $5,000.00. The trial court is instructed to correct this error in the transcript, as the transcript controls over the minutes when there is a conflict. State v. Lynch, 441 So.2d 732, 733 (1983).
Second, it is noted that the indictment does not bear the defendant's fingerprints, as required by La.C.Cr.P. Art 871. Fingerprints are important evidence at any possible future multiple offender hearing. Neither the statute nor the jurisprudence provides a procedure to remedy this absence. Therefore, we instruct the lower court to comply with the requirement of La.C.Cr.P. Art. 871.
Third, the error patent review disclosed that the trial court improperly informed the defendant of the prescriptive period for post-conviction relief, as required by La.C.Cr.P. art. 930.8. This defect has no bearing on the sentence and is not grounds to reverse the sentence or remand the case for resentencing. State v. Mock, 602 So.2d 776 (La.App. 2d Cir.1992); State v. Cox, 604 So.2d 189 (La.App. 2d Cir.1992); La.C.Cr.P. arts. 921, 930.8(C). Therefore, the district court is directed to send appropriate written notice to defendant informing him of the proper prescriptive period within 10 days of the rendition of this opinion and to file proof of defendant's receipt of such notice in the record of the proceedings. State v. Mock, *782 supra; State v. Smith, 600 So.2d 745 (La. App. 2d Cir.1992).
Finally, it is noted that the sentencing judge failed to give defendant credit for time served. La.C.Cr.P. art. 880. Accordingly, it is recommended that the record be amended to allow the defendant such credit. State v. Butler, 25,563 (La.App.2d Cir. 1/19/94), 631 So.2d 22; State v. Hughes, 587 So.2d 31 (La.App. 2d Cir.1991), writ denied, 590 So.2d 1197 (1992).

DECREE
CONVICTION AFFIRMED; SENTENCE AFFIRMED AS AMENDED. REMANDED WITH ORDER.
AFFIRMED.
NOTES
[1] The defendant was sentenced on May 5, 1995, prior to the repeal of the sentencing guidelines which became effective on August 15, 1995. Therefore, the sentencing guidelines would be applicable to this case.