718 So.2d 466 (1998)
STATE of Louisiana, Appellee,
v.
Theodore DORSEY, Appellant.
No. 30683-KA.
Court of Appeal of Louisiana, Second Circuit.
June 24, 1998.
*467 Louisiana Appellate Project by Amy C. Ellender, Mer Rouge, for Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, Susan E. Hamm, Assistant District Attorney, for Appellee.
Before WILLIAMS, STEWART and PEATROSS, JJ.
STEWART, Judge.
This criminal appeal arises from the 4th Judicial District Court, Parish of Ouachita, the Honorable D. Milton Moore presiding. Defendant, Theodore Dorsey, was charged with and convicted by a jury of attempted forcible rape, La. R.S. 14:27 and La. R.S. 14:42.1. The court sentenced the defendant to serve 15 years imprisonment at hard labor without benefit of probation, parole or suspension of sentence. For the following reasons, we affirm defendant's conviction and sentence.

FACTS
At 10:00 p.m. on October 15, 1996, in Monroe, Louisiana, S.T.[1] walked past a nightclub *468 on the way to a friend's house. In front of the nightclub, she saw her stepbrother Michael Bowie and the defendant standing together. She spoke to her stepbrother and continued on to her friend's house.
After visiting her friend, S.T. decided to walk home. On her way back home, she encountered the defendant. The defendant, who was alone, told her that her stepbrother had "got into it with some guys" and was looking for her. S.T. said that her stepbrother was known for getting into trouble and that she wanted to find out what was wrong so she went with the defendant to find her brother. The two walked some distance toward the home of Bowie's girlfriend, but when they did not find Bowie, S.T. told the defendant that she was going to go home.
S.T. testified that when she turned to go home, the defendant jumped on her and forced her to the ground. The defendant was much larger and stronger than S.T. She struggled with the defendant and screamed for help as the defendant ordered her to be still. She tried to escape but fell, and the defendant grabbed her and said "I'm going to f___ you." S.T. continued to scream for help as the defendant ripped her shirt off and dragged her toward a thicket. The defendant told S.T. to "shut up" and began to hit her on the head. S.T. would not stop screaming, and the defendant said "Bitch, shut up or I'm going to jug you." She explained that "jug" is a slang word for "stab" and that she saw that the defendant had a black case on his belt which she believed to contain a knife.
S.T. testified, as follows:
And so he straddled across me after he got me down in the thicket. He straddled across me. And he tried to unbutton my pants and pull them down.... He kept telling me, he said ... `Pull. Come on and help me pull them down. Pull them down.' Like that. And I told him, I said, `I'm not going to help you pull them down.' And he said `Yes, you are.' And I said, `No, I'm not.' Because he couldn't get them down. So he wanted me to pull them down and I wouldn't do it. And so he started hitting me again and I started screaming.
The defendant was unable to remove the victim's pants although he had unbuttoned and unzipped them. Dorsey then ripped off the victim's bra, licked her breasts and neck and put his tongue in her mouth. The victim said that the defendant then exposed his penis and demanded that she suck it. When she refused to do this, the defendant put his hand over her mouth and told her "If you act right, I'll let you go" and "You've got to do what I tell you to do if you want me to let you go."
At this time (around 1:00 a.m.), Mr. Clifton Robinson and his dog were walking down some nearby railroad tracks and heard the victim screaming. Mr. Robinson asked the two if they were all right. The defendant told Robinson that he and his girl were "just having problems," but S.T. screamed that she needed help and that the defendant was trying to rape her. The defendant got up and ran away.
Mr. Robinson (who has a variety of prior convictions and pending felony charges) said that S.T.'s clothing was in disarray and that she was "pretty upset and crying and frightened." Notably, Mr. Robinson testified that he and his dog happened upon the victim because they were walking on the railroad tracks in order to catch a train headed toward Mississippi.
Shortly thereafter, Monroe Police Department (MPD) Officer Charles Johnikin was driving down a nearby street when he saw Mr. Robinson and the victim. Officer Johnikin testified that the victim was wearing a bra and pants and that she was "very hysterical" and frightened. The victim also had various bruises and scars about her face and arms. S.T. told the officer that a black male had tried to rape her. She described the defendant and told the officer the direction in which he ran. The victim told the officer that the defendant was wearing a football jersey bearing the number "73."
Recognizing that S.T.'s description matched a person he had just seen two blocks away, Officer Johnikin located and arrested the defendant. The defendant denied being with the victim or any female that evening.
*469 MPD Officer Anthony G. Williams assisted Officer Johnikin at the crime scene. Officer Williams recovered the victim's torn yellow shirt from the scene and observed that the grass in the area appeared to be flattened as if someone had been lying on the ground there. Officer Williams testified, as follows:
[The defendant] said "Why are you charging me with attempted rape?" He said that he gave her five dollars and she wanted ten dollars to have sex with him.... He [also] said he grabbed her.
MPD Detective Arthur Graves interviewed the victim on October 16. The detective testified that S.T. was still very shaken from the attack. Detective Graves also testified that the victim never told him that the defendant said "I'm going to f___ you," but testified that she told him that the defendant said "I don't want to f___ you no more anyway" at one point.
For his case in chief, the defendant recalled Officer Johnikin, who testified that the victim never told him that the defendant said "I'm going to f___ you." The Indigent Defender Board investigator, Daniel Kelly, testified that he interviewed the victim twice and that during these interviews, the victim never told him that the defendant made this statement. However, the investigator said that S.T. told him that she felt like the defendant was trying to rape her.
S.T. said that she didn't remember if she made that statement to police but testified, as follows:
It's just ... I mean something like that I didn't think to say that or anything like that because anybody with common sense would know that. And it's just, I mean ... it's not something I want to be telling everybody.
Based on all this evidence, the jury convicted the defendant of attempted forcible rape.

DISCUSSION
Assignment of Error 1: It was error for the Trial Court to refuse to include the special jury instructions the defendant requested.
Trial in this matter commenced on April 29, 1997. The day before, defense counsel filed a written request for certain special jury charges. The defendant requested that the court read to the jury the definitions of oral sexual battery, La. R.S. 14:43.3, sexual battery, La. R.S. 14:43.1, battery, La. R.S. 14:33, and simple battery, La. R.S. 14:35. The parties argued the matter before trial began, and the judge withheld ruling until after the close of evidence. When the case was complete, the judge refused to include these definitions in the charge, stating:
[T]he Court had considered those offenses and did not find that they were germane or relevant to the charged offense and that they would amount to what would be tantamount to a comment on the evidence, inasmuch as they are not permissive responsive verdicts and distinguish the charged offense attempted forcible rape from the homicide offenses; wherein, the Court of Appeal has held that negligent homicide must be included if there is a defense theory that could be argued. But I will note your objection and the special requested jury charges are in the record.
On appeal, the defendant argues that the court's refusal to read these charges was reversible error.
La.C.Cr.P. art. 803 provides, in pertinent part:
When a count in an indictment sets out an offense which includes other offenses of which the accused could be found guilty under the provisions of Article 814 or 815, the court shall charge the jury as to the law applicable to each offense.
La.C.Cr.P. art. 814 provides, in pertinent part:
(A) The only responsive verdicts which may be rendered when the indictment charges the following offenses are:
11. Attempted Forcible Rape:
 Guilty.
 Guilty of attempted simple rape.
 Not guilty.
None of the offenses included in the defendant's special charges are included in La. C.Cr.P. art. 814(A)(11). Moreover, these other crimes were not elements of the crime charged or of the responsive offense and the *470 jury did not need the instructions to understand the charge or the responsive verdict. Therefore, with regard to La.C.Cr.P. art. 814, the court did not err by refusing to give the requested charges.
One of the grounds cited by the court in denying these charges was that the charges would amount to a prohibited comment on the evidence. La.C.Cr.P. art. 806 provides:
The court shall not charge the jury concerning the facts of the case and shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted.
The requested charges did not "concern" the facts of the case in the manner contemplated by La.C.Cr.P. art. 806. In giving the charges, the court would not have told the jury what occurred or informed the jurors of any fact; these charges are merely definitions of crimes. Neither would the court have been voicing its opinion about whether the jury should consider any fact to be proven nor not proven; the charges did not indicate that the evidence proved only these other offenses. Accordingly, La.C.Cr.P. art. 806 was not a proper ground on which to refuse to instruct the jury on these charges.
However, the court's other reason for refusing the charges, and the focus of the defendant's argument, is the irrelevance of these other crimes in this case. La.C.Cr.P. art. 802 provides, in pertinent part:
The court shall charge the jury:
(1) As to the law applicable to the case;....
La.C.Cr.P. art. 807 provides, in pertinent part:
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
La.C.Cr.P. art. 802 obligates the trial court to charge the jury, when properly requested, as to the law applicable to any theory of defense which the jurors could reasonably infer from the evidence. State v. Jackson, 450 So.2d 621 (La.1984); State v. Johnson, 438 So.2d 1091 (La.1983); State v. Marse, 365 So.2d 1319 (La.1978); State v. Jasper, 28,187 (La.App. 2d Cir. 06/26/96), 677 So.2d 553, 564, writ denied 96-1897 (La.02/21/97), 688 So.2d 521; State v. Williams, 606 So.2d 1387 (La.App. 2d Cir.1992).
The trial court's refusal to give a requested special charge does not warrant reversal of a defendant's conviction unless it prejudices substantial rights of the accused. La. C.Cr.P. art. 921; State v. Vergo, 594 So.2d 1360 (La.App. 2d Cir.), writ denied, 598 So.2d 373 (La.1992).
Disputes over the inclusion of the definition of non-responsive offenses in the charge almost always occur in cases where a defendant is charged with murder or manslaughter. Pursuant to La.C.Cr.P. art. 814, the crime of negligent homicide is not a responsive verdict to a charge of either murder or manslaughter. However, in State v. Marse, supra, the supreme court accepted the defendant's contention that, in this case, the negligent homicide instruction was wholly correct and pertinent. The charge of first degree murder of a police officer requires proof of the offender's specific intent to kill or commit great bodily harm. La. R.S. 14:30(A)(2). Because specific intent to produce the criminal consequence of the death of a human being is not present when the offender's act is combined only with criminal negligence, Marse's defense focused on that element at trial.
The circumstances giving rise to the Marse rule are not present in this case. In this attempted forcible rape case, instructions regarding simple battery, sexual battery and oral sexual battery do not play the same role as a negligent homicide instruction in a murder case. Proof of criminal negligence tends to show that an offender's conduct was reckless but not purposeful and is thus a colorable defense. However, proof of simple battery, sexual battery and oral sexual battery does not tend to show that the offender had no intent to rape the victim.
Assuming the victim's testimony to be wholly true and correct, the state proved beyond a reasonable doubt that the defendant *471 committed the crimes of simple battery, attempted sexual battery and attempted oral sexual battery. However, proof of these separate offenses fails utterly to negate the proof that the defendant had the specific intent to rape the victim. Rather, proof of these offenses was offered incidentally in the course of setting forth the circumstances of this crime and was distinct from the proof of the elements of attempted rape.
The evidence showed that the defendant beat the victim with his fists and demanded that the victim perform fellatio upon him. This is evidence of the commission or attempted commission of the offenses in the requested charges. However, the evidence also showed that the defendant tried but failed to remove the victim's pants, repeatedly said that he was going to "f____" the victim and threatened to "jug" the victim if she did not cooperate. This (along with the battery evidence) is evidence pertinent to the attempted forcible rape. The evidence of simple battery, sexual battery and oral sexual battery tended, if anything, to support the state's theory that the defendant intended to rape the victim by showing the progression of the defendant's acts toward his goal and his acts after that goal was frustrated. This evidence hardly negates the defendant's specific intent to commit the crime charged.
Thus, the requested instructions in this case were not pertinent to the jury's determination of whether the state had carried its burden of proof or, indeed, for any other purpose. La.C.Cr.P. arts. 802, 807. Accordingly, the trial court did not err in refusing to include the instructions in the jury charge.
This assignment of error is without merit. Assignment of Error 2: The evidence at trial was insufficient to prove beyond a reasonable doubt that Theodore Dorsey was guilty of the offense of attempted forcible rape.
The record does not reflect that the defendant filed a motion for post-verdict judgment of acquittal pursuant to La.C.Cr.P. art. 821. Nevertheless, this court has elected to consider sufficiency arguments even in the absence of such a motion. State v. Green, 28,994 (La.App. 2d Cir. 02/26/97), 691 So.2d 1273.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard for appellate review of a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Carter, 29,972 (La.App. 2d Cir. 12/10/97), 704 So.2d 832.
La. R.S. 14:42.1 provides, in pertinent part:
A. Forcible rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
La. R.S. 14:27 provides, in pertinent part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
To support a conviction for attempted forcible rape, the state must prove that defendant had the specific intent to commit forcible rape and that he did an act for the purpose of, and tending directly toward, the accomplishing of his objective. La. R.S. 14:27 and 14:42.1; State v. Bryant, 607 So.2d 11 (La.App. 2d Cir.1992), 92-3082 (La.02/25/94), 632 So.2d 760; State v. Bailey, 585 So.2d 1245 (La.App. 2d Cir.1991); State v. Doby, 540 So.2d 1008 (La.App. 2d Cir. 1989), writ denied, 544 So.2d 398 (La.1989); State v. Doremus, 571 So.2d 831 (La.App. 3d Cir.1990). Specific intent, being a state of mind, need not be proved as a fact but may be inferred from the circumstances involved and the actions of the accused. State v. Graham, 420 So.2d 1126 (La.1982); State v. Bailey, supra; State v. Doby, supra.
It is not the function of appellate courts to reevaluate the credibility of witnesses and then proceed to overturn factual determinations of guilt. La. Const. art. 5, *472 § 5(C) (1974); State v. Richardson, 425 So.2d 1228 (La.1983); State v. Bailey, supra; State v. Lewis, 577 So.2d 799 (La.App. 2d Cir.1991), writ denied, 582 So.2d 1304 (La. 1991). Absent internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for the requisite factual conclusion. State v. Emerick, 499 So.2d 195 (La.App. 2d Cir.1986).
The victim testified that she tried in vain to flee from the much stronger defendant, who tackled her and then dragged her into a secluded area. She said that the defendant said that "he wanted it" and repeatedly said "`I'm going to f___ you.'" The defendant ripped the victim's shirt off and beat her about the head as she screamed, telling her to "shut up." When the victim would not be quiet, the defendant said "Bitch, shut up or I'm going to jug you." The defendant had what appeared to be a knife case on his belt. The defendant straddled the victim and tried to pull her pants down but was unsuccessful. Only after he could not get the victim's pants off did he proceed to other attempts to force the victim to perform sexual acts. Insofar as possible, the victim's testimony was corroborated by Mr. Robinson and MPD officers.
The conclusion to be drawn from these facts is inescapable-the defendant intended to force the victim to have sex with him and nearly accomplished his intended result. The defendant used force sufficient to prevent the victim from effectively resisting the attack but was simply unable to complete the crime. Further, his attack upon the victim was prematurely terminated because of the arrival of a stranger on the scene.
The evidence was sufficient to support the conviction, and this assignment of error is without merit.
Assignment of Error 3: The sentence imposed was harsh and excessive in light of the facts and circumstances.
Assignment of Error 4: The Trial Court failed to adequately articulate and consider the provisions of LSA-C.Cr.P. article 894.1 and the mitigating circumstances herein in fashioning a sentence.
The court sentenced the defendant to serve 15 years imprisonment at hard labor and imposed all of the sentence without benefit of probation, parole or suspension of sentence. Defendant timely filed a motion to reconsider sentence, urging that the sentence was inadequately particularized to him and that it was excessive. The court denied this motion without a hearing. The defendant now seeks review of this sentence.
La. R.S. 14:42.1 provides, in pertinent part:
B. Whoever commits the crime of forcible rape shall be imprisoned at hard labor for not less than five nor more than forty years. At least two years of the sentence imposed shall be without benefit of probation, parole, or suspension of sentence.
La. R.S. 14:27 provides, in pertinent part:
(D)(3) In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.
Although there is no minimum sentence for attempted crimes under La. R.S. 14:27(D)(3), State v. Callahan, 95-1331 (La.3/29/96), 671 So.2d 903, the sentence for attempt is to be imposed "in the same manner as for the offense attempted." This "same manner" language incorporates the benefits disability of the original statute. See State v. Middlebrook, 409 So.2d 588 (La. 1982). One post-Callahan case makes this distinction. See State v. Moore, 96 1835 (La.App. 1st Cir. 6/20/97), 696 So.2d 657. Considering that the "at least" restriction on benefits permits the court to deny benefits for the entirety of the sentence, the longest term of imprisonment which could be imposed for the completed crime is 40 years imprisonment at hard labor without benefits. Accordingly, the attempted crime carries a maximum sentence of 20 years imprisonment at hard labor without benefits.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record *473 must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983). The articulation of the factual basis for a sentence is the goal of La.C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982).
The second question is constitutional excessiveness. Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Davis, 28,662 (La.App. 2d Cir. 9/25/96), 680 So.2d 1296.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, this court does not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La. App. 2d Cir. 4/2/97), 691 So.2d 345; State v. Henton, 28,576 (La.App. 2d Cir. 9/25/96), 682 So.2d 777, writ denied, 96-2590 (La.03/27/97), 692 So.2d 391.
No pre-sentence investigation was conducted in this case. The judge had a copy of the defendant's "rap" sheet, and defense counsel recited personal information about the defendant at sentencing. Counsel told the court that the defendant was married, had children, had been employed at various lounges as a security officer for ten years and had a ninth-grade education. The court stated that the defendant had a 1980 conviction for attempted simple burglary as well as an arrest for illegal carrying of weapons in Shreveport. The defendant has two convictions for attempted unauthorized use of a movable-one in 1986 and one in 1995-and was sentenced to a year's imprisonment at hard labor for the latter conviction. Further, the defendant had been convicted of simple robbery (the rap sheet says 08/15/1994) and put on parole on March 15, 1996.[2]
The court considered the circumstances of this crime as well as the defendant's criminal history as the most important factors in imposing this sentence. The defendant's criminal history shows that his criminal behavior had increased in frequency and seriousness in the 2 years prior to this offense. His most recent conviction was for a violent crime, simple robbery, and he had recently been paroled on that offense when he committed this crime. The defendant used a high level of force and threatened to stab the victim in this crime if she did not comply with his demands. He left the scene of the crime only when he was spotted by a passerby and later tried to explain his conduct by lying to police. Although compliance with La.C.Cr.P. art. 894.1 is minimal, the 15-year term of imprisonment is not inappropriate for this defendant.
The closer question is the appropriateness of the prohibition against parole for the defendant's entire sentence. A thorough review of the jurisprudence indicated few nonhabitual offender cases where an attempted forcible rape sentence was imposed in its entirety without benefit of probation, parole or suspension. The offender in State v. Voiselle, 608 So.2d 688, 689 (La.App. 4th Cir.1992), was originally sentenced to the maximum term without benefits before he was adjudicated a habitual offender. In other cases, appellate courts report the imposition *474 of severe or maximum sentences but do not mention the benefits disability. See State v. Phillips, 29,020 (La.App.2d Cir. 12/11/96), 685 So.2d 565, a defendant who appears to have actually committed the aggravated rape of his 10-year-old stepdaughter was allowed to plead to attempted forcible rape. The judge sentenced this offender to 20 years imprisonment; this court did not mention whether any or all of the sentence was imposed without benefits. See also State v. Fink, 601 So.2d 694 (La.App. 5th Cir.1992) (although in the opinion the trial court noted that probation or suspension of sentence was inappropriate for the offender).
The court was not clear at sentencing whether the defendant was still on parole for his robbery conviction at the time he committed this crime. This recent parole and the subsequent commission of this offense, however, militates against giving the defendant parole in this case-he has already demonstrated his unwillingness to refrain from committing felony offenses after early termination of incarceration. Nevertheless, this is a closer sentencing issue. Because of the wide discretion given the trial judge in sentencing matters and because there are few if any mitigating facts presented by this record, we affirm the defendant's sentence.

ERROR PATENT
At sentencing, the court told the defendant that he had three years "from today's date" to file any application for post-conviction relief. Actually, La.C.Cr.P. art. 930.8 says that the prescriptive period begins to run from the date the conviction becomes final. Therefore, we direct the district court to accurately inform the defendant of this period in writing and to file proof of receipt of this information into the record.

CONCLUSION
For the above reasons, we affirm the defendant's conviction and sentence and direct the district court to properly inform defendant regarding filing of applications for postconviction relief.
AFFIRMED.
NOTES
[1] Because of the nature of this offense, the victim is referred to by initials.
[2] Not noted by the trial judge but included on Dorsey's rap sheet is an undisposed-of charge of aggravated rape on July 24, 1993.