796 So.2d 145 (2001)
STATE of Louisiana, Appellee,
v.
Shone D. BAKER, Eddie R. Chatmon, Jr. and Jerald D. Chatmon, Appellants.
No. 34,973-KA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 2001.
*148 Louisiana Appellate Project, by J. Wilson Rambo, Counsel for Appellant, Shone D. Baker.
Peggy J. Sullivan, Monroe, Counsel for Appellant, Eddie R. Chatmon, Jr.
Amy C. Ellender, Baton Rouge, Counsel for Appellant, Jerald D. Chatmon.
Richard Ieyoub, Attorney General, William R. Coenen, Jr., District Attorney, Penny Douciere, Assistant District Attorney, Counsel for Appellee.
Before NORRIS, STEWART and KOSTELKA, JJ.
KOSTELKA, Judge.
Shone Baker ("Baker"), Eddie Chatmon, Jr. ("Eddie") and Jerald Chatmon ("Jerald") (collectively referred to herein as "defendants") were convicted of the second degree kidnapping and attempted forcible rape of P.D.[1] For the offense of attempted forcible rape, the defendants were sentenced to two and one-half years at hard labor, the first year without benefit of probation, parole, or suspension of sentence. For the second degree kidnapping conviction, the defendants were sentenced to five years at hard labor, the first two years without benefit of probation, parole, or suspension of sentence. The sentences were ordered to run concurrently. The defendants now appeal. We affirm.

FACTS
After she got off work at approximately 11:00 p.m. on February 15, 1999, P.D. drove her father's van to the Citgo Station on Highway 80 in Rayville, Louisiana in order to purchase cigarettes. Before she entered the store, she waved to Baker and Jerald who were seated in a parked car in the store parking lot. After entering the *149 store, she saw Roderick Williams ("Williams") and Eddie. P.D. was acquainted with Jerald, Baker and Williams but did not know Eddie. After Baker and Jerald came into the store, Baker began feigning sexual acts behind P.D. Without further notable incident, however, P.D. exited the store.
The conflicting evidence details two contrary versions of how P.D. eventually reentered her father's van. An eyewitness account by one of the two store clerks corroborates P.D.'s claim that at some point after she exited the store, she was physically picked up, carried by three of the alleged perpetrators, and screamed twice. The two store clerks attached no significance to the event, believing that the participants were acting in jest.
P.D. maintained that as she attempted to unlock the van, Baker grabbed her by the throat. Thereafter, Eddie and Williams grabbed her feet and the three forced her inside the van while P.D. screamed. Baker claimed that it was his picking her up in jest for a couple of seconds and then putting her down which precipitated P.D.'s scream. All three of the defendants claimed that no other person participated in carrying P.D. Indeed, Baker, Jerald and Eddie persistently maintained that P.D. voluntarily entered the van and consented to the events which followed. Eddie, Baker and Jerald also entered the van. Williams followed the van in a vehicle which the four had originally occupied when they arrived at the store.
Jerald drove the van while Eddie, Baker and P.D. were in the back seats. It is undisputed that Eddie and Baker fondled and sucked P.D.'s breasts and rubbed between her legs. P.D. also claimed that the defendants unzipped her pants but never removed them. The defendants maintained this activity was consensual; P.D. claimed it was forcefully done without her consent and under verbal threat by Baker that she was going to have sex with him. During the encounter, P.D.'s watch and necklace were broken. Jerald drove the van a short distance, stopping it in a secluded area. Again, the inconsistent testimony reveals two versions of the end of the incident. P.D. claims that after the van stopped, Williams, who stood at the door of the van observing the activity, warned the other defendants that a car was approaching. Thereafter, the defendants dispersed, leaving P.D. alone in her father's van. Baker, Eddie and Jerald maintained that Eddie and Baker honored P.D.'s desire to stop the sexual foreplay and exited the vehicle, but not before Jerald urinated in the van.
P.D. immediately left the scene and reported the incident to the police who eventually arrested the defendants.[2] After a unanimous jury found Baker, Eddie and Jerald guilty as charged, this appeal ensued.

DISCUSSION

Sufficiency of the Evidence
First, it is appropriate that we address the defendants' sufficiency-of-the-evidence complaint in which they urge that the evidence was insufficient to convict them of attempted forcible rape and second degree kidnapping. State v. Hearold, 603 So.2d 731 (La.1992).
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate *150 review for a sufficiency-of-evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bosley, 29,253 (La.App. 2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983).
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson and does not extend to credibility determinations made by the trier of fact. State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. Bosley, supra. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).

Second Degree Kidnapping
In order to convict the defendants of second degree kidnapping, the state was required to prove that P.D. was forcibly seized and carried from one place to another and physically injured or sexually abused. La. R.S. 14:44.1(A)(3), (B)(1). Specifically, defendants contend that no kidnapping occurred because P.D. consented to their actions.
The jury heard testimony from P.D. which explained how, when she was in the store, Baker grabbed her by the waist from behind and began feigning sex with her. P.D. further detailed how the defendants forcibly and without her consent carried her into her father's van amidst her screams and Baker's expressed intent to have sex with her. Her testimony further revealed that, with Jerald driving the van, the defendants transported P.D. to a secluded area. During the journey, P.D. testified that without her consent, Eddie and Baker ostensibly overpowered her while they unzipped her pants, rubbed between her legs and fondled her breasts. P.D. also claimed that during the next days after the incident, the defendants sought to apologize to her and to replace any items which may have been damaged as the result of the encounter.
Of course, one witness's testimony is sufficient to support a defendant's conviction. State v. Mickens, 31,737 (La.App. 2d Cir.03/31/99), 731 So.2d 463, writ denied, 99-1078 (La.09/24/99), 747 So.2d 1118; State v. Bryant, 607 So.2d 11 (La.App. 2d Cir.1992), writ denied, 92-3082 (La.02/25/94), 632 So.2d 760. Certainly, if believed, P.D.'s testimony alone is sufficient to establish that Baker and Eddie forcibly seized her, and with Jerald's aiding and abetting as the driver of the vehicle, carried her from one place to another while sexually abusing her against her will.
Nevertheless, the physical evidence showing that at some time during the incident *151 P.D.'s watch and necklace were broken clearly corroborates P.D.'s claims. So, too, does the police officers' testimony that P.D.'s shirt was stretched. Further corroborating P.D.'s testimony is the fact that she immediately reported the incident to the police and at least one officer said she was crying and appeared to have been in a struggle. Most persuasive, however, was the eyewitness account of one of the store clerks who unequivocally confirmed that P.D. had been carried by three of the defendants while in the parking lot of the store, even though both clerks failed to recognize that she was in danger.
The resulting rejection of defendants' contradictory version of the incident is supported by the record. When compared with their trial testimony, the numerous inconsistent and cursory statements given by the defendants to the police after the event obviously raised issues of credibility in the jurors' minds. Jerald admitted that after the incident, P.D. informed him that she was going to call the police. Moreover, the self-serving explanation of defendants' meeting with P.D. after the event, i.e., that a police officer informed them that she wanted to talk to them, was not unreasonably discarded by the jury. Finally, the conclusion that the defendants fabricated their account of the incidents is reasonably supported by the clearly contradictory, independent eyewitness account of crucial events in the parking lot. The jury obviously did not believe defendants' uncorroborated and internally-contradictory rendition of the crucial facts regarding proof of forcible seizure, i.e., how P.D. got into the van. Under these circumstances, we find the evidence sufficient to support defendants' second degree kidnapping conviction.

Attempted Forcible Rape
Forcible rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape. La. R.S. 14:42.1(A). Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward accomplishing of his object is guilty of an attempt to commit the offense intended. La. R.S. 14:27. To support a conviction for attempted forcible rape, the state must prove that the defendant had the specific intent to commit forcible rape and that he did an act for the purpose of, and tending directly toward, the accomplishing of his objective. La. R.S. 14:27, 14:42.1; State v. Dorsey, 30-683 (La.App. 2d Cir.06/24/98), 718 So.2d 466, writ denied, 98-2227 (La.12/18/98), 732 So.2d 54.
Much like their argument relating to the kidnapping conviction, defendants urge that no attempted rape occurred in this case because P.D. consented to the defendants' actions. Again, the jury was faced with contradictory versions of the event, but obviously accepted P.D.'s testimony as credible regarding the issues of her consent, inability to resist, and her belief that defendants intended to rape her. As we have previously discussed, such credibility determinations remain within the province of the jury and in this case are supported by the record.
It was not unreasonable for the jury to conclude that if P.D. was forcibly placed into the van, the fondling which followed was likewise accomplished without her consent. As discussed above, the damage to her watch, necklace and shirt clearly support her assertions, as does the eyewitness account of the parking lot events and Jerald's admission that she threatened to call the police.
*152 We also find that the evidence supports the jury's conclusion that defendants had the specific intent to forcibly rape P.D. and did an act in furtherance of that purpose. The determination of whether the requisite intent is present in a criminal case is also for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982). Specific intent, being a state of mind, need not be proved as a fact but may be inferred from the circumstances involved and the actions of the accused. Bryant, supra. Regarding the issue of specific intent, P.D. testified that Baker stated, while they were in the Citgo station, "She won't give me none of that p____." Moreover, she claimed that Baker twice stated to her that "[y]ou're going to give me some of this p____." In a February 22, 1999 statement, Baker admitted that the two talked about sex as they left the store and walked toward the van. At trial, he stated that he asked her "did she want to do anything with us[?]" Eddie also admitted that his business in the van was "[t]rying to have a little sex." Finally, Jerald revealed his awareness that Eddie, Baker and P.D. were "messing around" in the back of the van while he drove the vehicle.
From this evidence, the jury could have reasonably concluded that the defendants, Eddie and Baker, as active participants, and Jerald, as a principal who knowingly aided and abetted in the commission of the crime, possessed the specific intent to forcibly have sexual intercourse with P.D. The evidence also supports the conclusion that the defendants' physical forcing of P.D. into the van and fondling her without her consent represented an act in furtherance of that purpose from which she could not remove herself or resist. Where the fact-trier has made a rational evaluation of the evidence, an appellate court should not disturb that determination. State v. Bailey, 585 So.2d 1245 (La. App. 2d Cir.1991). Accordingly, this assignment lacks merit.

Batson Challenge
The defendants have also raised a claim relating to the systematic exclusion of African American jurors in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
The Batson holding is codified in our law as La.C.Cr.P. art. 795(C), which provides:
C. No peremptory challenge made by the state or the defendant shall be based solely upon the race of the juror. If an objection is made that the state or defense has excluded a juror solely on the basis of race, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory racially neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from voir dire examination of the juror. Such demand and disclosure, if required by the court, shall be made outside of the hearing of any juror or prospective juror.
To make a Batson claim against the state, the defendants must first establish a prima facie case that the state exercised its peremptory challenges to exclude members of the jury venire solely on the basis of their cognizable race. Batson, supra; State v. Green, 94-0887 (La.05/22/95), 655 So.2d 272. The state need not give an explanation for its use of a peremptory challenge if the trial court does not find that the defense has made a prima facie case, but many trial courts require this to create a complete record. State v. Rose, 606 So.2d 845 (La.App. 2d Cir.1992).
Once defendants establish a prima facie case, the burden then shifts to *153 the state to come forward with a race-neutral explanation. This second step of the process does not demand an explanation from the state that is persuasive, or even plausible. The reason offered by the state will be deemed race-neutral unless a discriminatory intent is inherent within that explanation. The persuasiveness of the state's explanation only becomes relevant at the third and final step which is when the trial court must decide whether defendants have proven purposeful discrimination. Thus, the ultimate burden of persuasion as to racial motivation rests with, and never shifts from, the opponent of the peremptory challenge. Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).
On appellate review, this court must analyze whether the reasons really were race-neutral and whether the trial court properly assessed the weight and credibility of each explanation. State v. Mamon, 26,337 (La.App. 2d Cir.12/16/94), 648 So.2d 1347, writ denied, 95-0220 (La.6/2/95), 654 So.2d 1104.
In this case, after the state exercised its first nine peremptory challenges against potential African-American jurors, the defendants urged a Batson challenge. Each of the defendants is of African-American descent. At that time, the court deferred ruling on the objection until after completion of jury selection. Ultimately, the court denied the defendants' Batson challenge finding that "there [are] adequate race neutral grounds" for the state's exercise of eighteen peremptory challenges against African Americans. The final jury was comprised of eight Caucasians and four African-Americans.
The record before us does not reflect the court made an explicit finding that the defendants had established a prima facie case that the state had exercised its peremptory challenges to exclude members of the jury venire solely based upon their cognizable race. Nevertheless, it is apparent in the court's explanation that race-neutral grounds existed for the subject challenges that it had implicitly so determined. Clearly, with the record showing that 90 percent of the state's challenges were exercised against African-Americans, we concur in this conclusion. Of course, there is no requirement that the state provide race-neutral reasons for the challenge if those reasons are apparent from the voir dire examination. La.C.Cr.P. art. 795(C). We agree with the trial court's determination that this is such a case.
Of the eighteen peremptory challenges exercised by the state against African-Americans, twelve of those were utilized against those potential jurors who either knew or had some relation to the three defendants or were acquainted with their families. The knowledge of the parties is a sufficient race-neutral reason for the peremptory challenge of a prospective juror. Mamon, supra. These jurors included Andrew Harper, whose wife was related to Baker and who considered himself to be a good friend of the three defendants. Latrece White knew all of the defendants for some years and also considered herself to be a good friend of them; this potential juror had also been convicted of an elderly abuse offense. Angela Coleman testified that she knew all of the defendants, had seen them at clubs and had visited their homes and their families' homes. Shwanda Dean stated that she also knew all of the defendants. Mamie Cleveland claimed that two of the defendants were friends with her children, had been to her home, and that she had seen the third defendant at church; she also had seen the defendants' parents at church. Mary Brown also *154 knew all of the defendants and considered them close friends because her husband had coached them. Richard Whitfield testified that he knew the mother of at least one of the defendants and considered himself a good friend of hers; he felt that it would be difficult to serve on the jury in this case. Frances Moss testified that she was a good friend of the mother of one of the defendants and had attended school with her sister. Hattie Reynolds testified that her son and nephew had been involved in criminal proceedings and that she works with the mother and aunt of one of the defendants and considers both individuals to be her good friends; resultantly, the potential juror felt that it would be difficult to serve on the jury. Tabitha Lewis testified that she had been a friend of the defendants for a good while and that she, too, would have difficulty serving on the jury because of that relationship. Retha Reynolds stated that she knew the defendants and had talked to them on the street and that most of her family knew them; she felt her family to be good friends with the defendants' families and that because of these relationships, it would be difficult for her to serve on the jury. Finally, Edna Lomax testified that she knew Eddie and his family, including his mother, and went to church with his grandmother; these relationships would make it hard for her to serve on the jury.
Three of the potential jurors were excused due to either their own or their children's criminal records. A juror's connection with prior criminal trials is a raceneutral explanation for the removal of a juror, as is a juror who has a family member who has a criminal record. Mamon, supra. Billy Rogers testified that one of his sons was in jail on a rape conviction; Gustavus Lynch revealed that he had an aggravated assault "charge" against him about three years prior to his testimony; and, Johnny Hedgemon testified that he had a previous felony theft conviction.
The final three jurors were challenged for various reasons. Elnora Boughton testified that she knew the defendants' attorney and knew of the defendants; she also expressed difficulty in being able to vote guilty, although she felt she could do so if the state proved its case. A potential juror's expression of acquaintance with the defendant's attorney has also been held to be a valid reason for a peremptory challenge. State v. Tilley, 99-0569 (La.07/06/00), 767 So.2d 6, cert. denied, ___ U.S. ___, 121 S.Ct. 1488, 149 L.Ed.2d 375 (2001). Jessie Collins testified that he had been in the district attorney's office and had possibly been a potential witness in a case involving a fight between two individuals; he also had been employed by the parish police jury for approximately twenty-two years. Previous association with the District Attorney can likewise be a valid ground for a peremptory challenge of a juror. Mamon, supra. Finally, potential juror Tommy Bell testified that he had trouble seeing and thus reading. It is apparent from the voir dire of this potential juror that the state was concerned about his poor eyesight and ability to read as the result of it. Because of the number of statements and photographs which were placed into evidence, and ultimately viewed by the jury, we find this concern and the resulting removal of the juror to be justified and race-neutral.
Based upon the record before us, as well as supporting jurisprudence, we conclude that race-neutral reasons existed for the peremptory challenges exercised by the state against these jurors. We therefore find no merit to defendants' claims.

*155 Rap Sheet

The defendants next argue that the trial court erred in failing to grant their request for P.D.'s rap sheet. The record shows that in pre-trial motions, the defense requested a copy of the criminal record of P.D. urging that they had "evidence that [P.D.] was convicted of [a] shoplifting [offense] after this offense, ..." The trial court denied the defendants' motion.
It has long been held that the state is required to make available rap sheets on all state witnesses in its possession or available to it on its computer system. State v. Miles, 569 So.2d 972 (La.1990); State v. Laird, 551 So.2d 1310 (La.1989); See also, State v. Thomas, 97-1542 (La.11/21/97), 704 So.2d 228. However, the state's failure to comply with discovery procedure will not automatically command reversal; defendant must show prejudice in order for his conviction to be reversed. State v. Morris, 28,312 (La.App. 2d Cir.08/21/96), 679 So.2d 482; State v. Bennett, XXXX-XXXX (La.App. 1st Cir.11/08/00), 771 So.2d 296.
Even were we to conclude that the trial court erred in denying the defendants' request for P.D.'s rap sheet, we cannot determine that they have been prejudiced by this error. The record shows that upon cross-examination by the defendants' counsel, P.D. admitted to being arrested for "[t]heft and [s]hoplifting" and contributing to the delinquency of a minor and that she spent three days in jail. The jury also heard that she failed to appear for court on that charge which resulted in an active warrant for her arrest. With the jury fully apprised of that which was contained in the rap sheet, defendants have failed to show prejudice in the trial court's ruling. Accordingly, this assignment of error lacks merit.

Jury Instructions
Prior to closing arguments, the trial court denied defendants' request that the jury be given instructions on the crimes of sexual battery and criminal mischief because these offenses are not responsive verdicts to attempted forcible rape and would require further explanation. On appeal, defendants urge that the trial court's ruling deprived them of their right to present a defense.
A requested special jury charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. La.C.Cr.P. art. 807. La. C.Cr.P. art. 802 obligates the trial court to charge the jury, when properly requested, as to the law applicable to any theory of defense which the jurors could reasonably infer from the evidence. Dorsey, supra. Nevertheless, the trial court's refusal to give a requested special charge does not warrant reversal of a defendant's conviction unless it prejudices substantial rights of the accused. Id.
Of course, defendants do not dispute that neither criminal mischief nor sexual battery are listed as responsive verdicts to the crime of attempted forcible rape. Accordingly, La.C.Cr.P. art. 814 does not require instructions as to these offenses. Nevertheless, they urge that because each of these offenses was applicable to a theory of defense at trial, the court prejudicially denied the instruction.
Sexual battery is the nonconsensual, intentional touching of the anus or genitals of the victim using any instrumentality or part of the body of the offender. La. R.S. 14:43.1. Criminal mischief is the intentional tampering with any property of another, without the consent of the owner, with the intent to interfere with the free enjoyment of any rights of anyone thereto, or with the intent to deprive anyone entitled *156 thereto of the full use of the property. La. R.S. 14:59.
We have previously rejected this argument relating specifically to the crime of sexual battery in State v. Dorsey, supra. Therein, this court declined to extend the holding of State v. Marse, 365 So.2d 1319 (La.1978) to its facts. Marse held that a trial court erred, although not prejudicially, in declining to give requested jury instructions on negligent homicide and criminal negligence in a first degree murder prosecution in which there was evidence from which the jury could have inferred that the defendant was guilty of negligent homicide. Dorsey limited Marse's holding to situations where the instructions regarded a crime which potentially provided the defendant with a "colorable defense" or could possibly exonerate the defendant of guilt of the charged crime. Because, in Dorsey, proof of the crime of sexual battery did not negate proof that the defendant had the specific intent to rape the victim (on the charged crime of attempted forcible rape), the court determined that sexual battery was not a "colorable defense" to attempted forcible rape, and, accordingly, found no error in the trial court's refusal to include sexual battery in the jury charge. Obviously, the same rationale also applies to the crime of criminal mischief.
The element distinguishing sexual battery from attempted forcible rape is intent to rape. Said another way, attempted forcible rape requires proof of intent to rape while sexual battery does not. Indeed, as pointed out by the Dorsey court, in many cases of forcible rape, evidence of sexual battery (or other offenses) may indeed exist and be relevant to show the procession of the defendant's acts toward his goal of rape while not negating the existence of the intent to rape. Thus, in any given case of forcible rape, rather than being a defense to the forcible rape, defendant may in fact also be guilty of sexual battery or criminal mischief during the series of events leading up to the charged offense.[3] Because those circumstances exist here, any evidence from which the jury could infer that the defendants were guilty of either sexual battery or criminal mischief would fail to necessarily exonerate defendants and qualify as a "colorable defense." We, therefore, find Dorsey dispositive of the issue.
Even were we to conclude that the trial court erred in failing to give the instructions, we cannot find that defendants have shown prejudice. The defendants' only claim to prejudice is that "[t]he jury should have been presented with the reality that although a crime may have been committed on February 15, 1999 (sexual battery and/or criminal mischief), it may not have been the crime that the district attorney ultimately decided to charge in this case...." Under this argument, the omission would have been prejudicial only if the jury had insufficient information to understand that if the defendants were guilty only of sexual battery or criminal mischief, it should find them not guilty. Marse, supra.
A review of the record before us shows that the trial court clearly defined the crime of forcible rape and general and specific intent. The court listed the responsive lesser offenses and clearly explained that "[i]f you are not convinced that the defendants are guilty of the offense charged you may find the defendants guilty of a lesser offense if you are convinced beyond a reasonable doubt that the defendants are guilty of a lesser offense...." *157 Moreover, the court clearly stated, "If the State has failed to prove beyond a reasonable doubt that the defendants are guilty of either the offense charged or of a lesser responsive offense the form of your verdict should be not guilty...." While the jury was not specifically instructed regarding the crime of sexual battery, the defendants elicited much general testimony regarding that crime due to the fact that they were originally arrested for sexual battery. Certainly, with this information, the jury was aware that sexual battery was a separate and distinct crime from attempted forcible rape and that this offense was not a responsive verdict to the charged crime. Under these circumstances, we find that the jury was sufficiently informed of its duty to acquit defendants if the evidence warranted only a finding of either sexual battery or criminal mischief. Because no prejudice has been shown, this assignment of error lacks merit.

Post-Conviction Relief Information
The defendants correctly urge that the trial court erroneously informed them that they had three years in which to file applications for post-conviction relief. In pertinent part, La.C.Cr.P. 930.8(A) provides that no application for post-conviction relief, including an application which seeks an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Articles 914 or 922. Accordingly, the trial court instruction was in error.
The Louisiana Supreme Court has held that La.C.Cr.P. art. 930.8(C), which requires the trial court to inform the defendant of the limitations period for filing an application for post-conviction relief, is supplicatory language and does not bestow an enforceable right upon an individual defendant. State ex rel. Glover v. State, 93-2330 (La.09/05/95), 660 So.2d 1189. Accordingly, the defendants are now advised by this court's opinion that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La.C.Cr.P. arts. 914 or 922.

Baker's Sentence
On appeal, Baker urges that the imposed sentences are constitutionally excessive. As noted above, Baker was sentenced to concurrent sentences of two and one-half years at hard labor, one year without benefits, on the attempted forcible rape conviction and five years at hard labor, the first two years without benefits, on the second degree kidnapping conviction. He claims that the sentences are excessive due to the fact that he is a youthful father of one child whom he financially supports and that he has no substantial criminal record.
Because Baker failed to file a motion to reconsider the sentences, his sentence review is limited to the bare claim that the sentences are unconstitutionally excessive. La.C.Cr.P. art. 881.1; State v. Mims, 619 So.2d 1059 (La.1993). Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense, or shocking to the sense of justice. State v. Lobato, 603 So.2d 739 (La.1992).[4]
For the crime of second degree kidnapping, Baker faced a possible sentence at hard labor for not less than five nor more than forty years at hard labor with at least two years of the sentence without benefits. *158 On the attempted forcible rape conviction, Baker faced a maximum twenty-year sentence.[5]
We affirm the imposed sentences. The facts show that Baker and his codefendants participated in the senseless forcible abduction and attempted forcible rape of a young woman. As the trial court commented, these are indeed serious offenses which violate the criminal statutes of this state. The seriousness of such activity is justified neither by poor judgment nor claimed misunderstanding. Even though Baker's criminal record consists only of four misdemeanor disturbing the peace convictions, it is obvious that he has failed to learn from his mistakes and the leniency afforded him by the criminal justice system. Even with this defendant's young age and lack of a criminal record, we can find no abuse of discretion in the trial court's choice of sentences. Under the circumstances, these low-range punishments are neither shocking to the sense of justice nor a needless and purposeless imposition of pain and suffering.[6]

Conclusion
For the above-stated reasons, defendants' convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] We note that the Bill of Information and the transcript spell P.D.'s surname inconsistently as do both the defendants' and state's briefs.
[2] Williams' case was severed from the remaining defendants due to his request for a bench trial.
[3] Notably, in closing arguments the state suggested that the offense of sexual battery supported the second degree kidnapping conviction.
[4] Notably, the record also shows adequate La.C.Cr.P. art. 894.1 compliance.
[5] There is no statutory minimum sentence under La. R.S. 14:27. State v. Callahan, 95-1331 (La.03/29/96), 671 So.2d 903.
[6] Interestingly, the two remaining defendants have not appealed their sentences.