| Judge TERRI F. LOVE.
Defendant, Robert J. Burt, was found guilty of forcible rape and sexual battery. He was sentenced to ten years at hard labor for the forcible rape conviction, and ten years at hard labor for the sexual battery conviction, with the sentences to run concurrently. Defendant appeals his conviction and alleges the following assignments of error: (1) the evidence was insufficient to support the convictions; (2) double jeopardy exists between the rape and sexual battery convictions; and (3) the sentence imposed on the sexual battery conviction was excessive. For the following reasons, we affirm the convictions and sentences for forcible rape and sexual battery.

STATEMENT OF CASE

On April 21, 2001, the State charged Robert J. Burt with forcible rape and sexual battery. At his arraignment on June 28, 2001, the defendant pled not guilty. On October 10, 2001, following a bench trial, the defendant was found guilty and the court ordered a pre-sentence investigation report. On October 23, 2001, the defendant filed a motion for new trial. On January 24, 2002, the court denied the defendant’s motions for new trial and post-verdict judgment of acquittal, and the defendant elected immediate imposition of sentence. The court sentenced him to ten years at hard labor, with credit for |2time served, the first two years of the sentence to be served without benefit of probation, parole or suspension of sentence on the forcible rape conviction, and to ten years at hard labor, with credit for time served, on the sexual battery conviction, sentences to run concurrently.

STATEMENT OF FACT

Officer Michael Poletti testified that at approximately 8:00 a.m. on April 21, 2001, the victim,, A.M.,[1] entered the First District Police Station, and told him a white male with the last name “Burt” had raped her at the Downtown Inn. Poletti noticed that A.M. was crying and visibly upset, and he observed swelling and bruising around her neck. Poletti notified the po *719 lice dispatcher that he needed to speak with someone in the Sex Crimes Unit. Detective Henry Waller responded to Po-letti’s call. Poletti explained the situation to Waller, who then came to the station to speak with A.M.
Detective Waller testified that the police dispatcher notified him that the First District placed a call for a Sex Crimes Unit investigator. Waller relocated to the First District where he met Officer Poletti, who related to him that A.M. said she met her assailant at the Hilton Hotel, went to breakfast with him, and then to the Downtown Inn where the rape occurred. Through his interview of A.M., Waller developed the defendant as a suspect. Waller, Detective Jim O’Hern and Officer Cotton relocated to the Downtown Inn. The officers knocked on the door. When the defendant answered the knock, Waller informed him that he was investigating a rape complaint. The'defendant identified himself as Robert Burt, and invited the officers into his room. Waller noticed that the room was just as A.M. had described it. Waller also observed on the floor the clothing A.M. said the defendant wore at the time of attack, a shirt with an “H” and a “98” on the |sleft breast and a pair of khaki pants. Waller placed the defendant under arrest, and transported him to the Sex Crimes Unit, while Detective O’Hern processed the scene. Waller mailed a photographic lineup to A.M. from which she identified the defendant as her attacker.
Registered Nurse Lisa James testified that she performed the rape examination on A.M. at Charity Hospital. When Ms. James encountered A.M., she was very upset, crying, and very anxious over her ordeal. During her examination of A.M., Ms. James observed a tear in the posterior fourchette area of her vagina, and swelling of the labia major, which she said was not normal and could only have occurred from force. Ms. James stated that neither she nor the physician on call was able to perform a vaginal swab because A.M. experienced such discomfort. A.M. received medications to calm her, prevent pregnancy, and eliminate contraction of venereal disease.
A.M. testified that in April 2001, she was in . town attending a convention. She stayed at the Hilton Hotel, where the convention was headquartered. Her reservation at the Hilton was paid for through Saturday, April 20, 2001, so she had to check out of the Hilton the next day. However, her flight home was not until the following Monday, so she was looking for a cheaper hotel room to bridge the time until her flight home. At about 6:00 a.m. on April 21, 2001, as she sat in the Hilton lobby, she asked the defendant for a cigarette. They struck up a conversation. The defendant told A.M. that he worked at a hotel and could get her a free room. She asked him for a telephone number where she could reach him, after she spoke to her friends. On a piece of paper the defendant wrote: “Downtown Inn, 2222 Tulane Avenue, Room Number 340, Robert Burt.” Then, the defendant asked her if she would have breakfast with him. He said he would pay for |4breakfast, and her cab fare back to the Hilton. After they ate breakfast, they walked one block to the Downtown Inn so she could see the rooms. He told her that the room he had in mind for her was occupied but that she could see his room. They entered the defendant’s room. He attempted to kiss her but she turned away. She told him she wanted to leave and she began to walk to the door. He blocked her path and once again tried to kiss her. This time she did not resist. The pair engaged in consensual kissing after which the defendant “dry humped” her on the bed. The defendant pushed A.M.’s underwear to the side, and digitally penetrated her vagina. She immediately *720 pushed his hand aside and told him “No!” The pair continued kissing for a few seconds, after which the defendant digitally penetrated her again. Again she told him to stop, and attempted to get up off the bed to leave. The defendant pushed her down on the bed and told her: “You’re either going to let me “f..you or I’m going to turn you over on your stomach and I’m going to “f..you.” The defendant put his hand over A.M.’s mouth to muffle her screams. He then said: ‘You can either leave here alive or you can leave here dead.” When A.M. continued to resist the defendant, he began to choke her, and raped her as he did so. The attack ended when A.M. asked the defendant why he was doing this to her. After the attack, A.M. told the defendant she wanted to smoke a cigarette. The defendant agreed, and followed A.M. to the lobby. She obtained a cigarette from a stranger in the lobby, so did the defendant. A.M. asked the hotel clerk to call a cab for her. When the cab arrived, the defendant gave her $5.00 cab fare. She asked the driver to take her to the nearest police station, where she related the incident to Detective Waller, and gave him the piece of paper containing the defendant’s name and address. The police transported her to [ Bthe hospital for a rape exam. The nurse could not perform a vaginal swab on her because it was just too painful.
After A.M. returned home out-of-state, she received a photographic lineup from Detective Waller. She positively identified the defendant from the lineup as the man who raped her.
The defendant testified that he met A.M. on April 21, 2001, at the Hilton Hotel when she asked him for a cigarette. They struck up a conversation and decided to go to breakfast. After eating their meal, the defendant pointed across the street and showed A.M. the hotel where he was staying. He offered to show her his room. Once inside the room, the pair lay on the bed, and engaged in consensual kissing and touching. The defendant moved A.M.’s underwear to the side, and penetrated her digitally. A.M. told him no, so he stopped. The kissing resumed. Once again, the defendant penetrated A.M.’s vagina with his fingers. Again, A.M. told him no, and he stopped. A.M. told the defendant she had to leave because her friends would be worried. A.M. and the defendant got out of bed, and left the room. The defendant accompanied A.M. to the lobby. A.M. asked the desk clerk to call a cab for her. As they waited, the defendant and A.M. smoked a cigarette and spoke to the defendant’s friend. The manager of the hotel told them they could not smoke in the lobby, so they went outside to finish their cigarettes. When the cab arrived, the defendant gave A.M. five dollars for the fare. A.M. entered the cab and left. The defendant denied raping A.M.

LAW AND DISCUSSION

ERRORS PATENT
There is a patent error patent on the face of record as to the sentence on the sexual battery conviction. The trial court failed to impose the [ (¡defendant’s sentence without benefit of parole, probation, or suspension of sentence as mandated by La. R.S. 14:48.1(C). Formerly, this court followed State v. Fraser, 484 So.2d 122 (La.1986), which held that a sentencing error favorable to the defendant that is not raised by the State on appeal may not be corrected. However, the legislature later enacted La. R.S. 15:301.1,[2] which address *721 es those instances where sentences given contain statutory restrictions on parole, probation or suspension of sentence. Paragraph A of La. R.S. 15:301.1 provides that in instances where the statutory restrictions are not recited at sentencing, they are included in the sentence given, regardless of whether or not they are imposed by the sentencing court. Furthermore, in State v. Williams, 2000-1725 (La.11/28/01), 800 So.2d 790, the Louisiana Supreme Court ruled that section A of the statute self-activates the correction and eliminates the need to remand for a ministerial correction of an illegally lenient sentence, which may result from the failure of the sentencing court to impose punishment in conformity with that provided in the statute. Hence, this Court need take no action to correct the trial court’s failure to specify that the defendant’s sentence be served without benefit of parole, probation or suspension of sentence. The correction is statutorily effected. (La. R.S. 15:301.1A).
I ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error the defendant complains the evidence is insufficient to support the convictions.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372, 378 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. Louisiana Revised Statute 15:438 is not a separate test from Jackson v. Virginia, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198, 1201 (La.1984). All evidence, direct and circumstantial, must meet the Jackson rea *722 sonable doubt standard. State v. Jacobs, 504 So.2d 817, 821 (La.1987).
The essential elements of forcible rape are: (1) an act of vaginal or anal intercourse; (2) without the lawful consent of the victim; (3) where the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape. La. R.S. 14:42.1(A)(1); State v. Atkins, 1997-1278 (La.App. 4 Cir. 5/27/98), 713 So.2d 1168.
|sIn this case, A.M. testified that after she refused the defendant’s advances for the second time and attempted to get off the bed to leave, he pushed her down on the bed and told her: “You’re either going to let me “f...” you or I’m going to turn you over on your stomach and I’m going to “f...” you.” The defendant put his hand over A.M.’s mouth to muffle her screams. He then said: “You can either leave here alive or you can leave here dead.” When A.M. continued to resist the defendant, he began to choke her.
Nurse Lisa James testified that she performed the rape examination on A.M. at Charity Hospital. Ms. James said that during her examination of A.M., she observed a tear in the posterior fourchette area of her vagina, and swelling of the labia major, which she said was not normal and could only have occurred from force.
Considering the foregoing testimony, the State proved the defendant had vaginal intercourse with A.M., without her consent, through the use of death threats and physical force to overcome A.M.’s resistance.
'Louisiana Revised Statute 14:43.1 sets forth the elements of sexual battery:
A. Sexual battery is the intentional engaging in. any of the following acts with another person, who is not the spouse of the offender, where the offender acts without the consent of the victim ...
(1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; ...
In this case, the defendant’s conviction for sexual battery was based on AM.’s testimony that he digitally penetrated her vagina, without her consent. However, A.M.’s testimony was not the only evidence the State relied upon to prove its case. The defendant testified that he digitally penetrated the victim. Under cross-examination, the defendant said:
|9Q. So you’re making out, and you figure you would try your luck under her dress?
A. Yes.
Q. She didn’t react right away?
A.... But then she said no. Pushed my hand away.
Continued cross-examination revealed:
Q. You tried to finger her again?
A. Yes.
Q. And this time she pushed you right out?
A. Pardon?
Q. This time she pushed you right off?
A. She pushed my hand away, ...
Even the defendant’s testimony supported the State’s case that the defendant sexually battered A.M. by digitally penetrating A.M.’s body without her consent. The judge was faced with contradictory versions of the event, but obviously accepted A.M.’s testimony as credible regarding the issues of her consent, inability to resist, and that the defendant raped and sexually battered her. The trier of fact’s determination of credibility is not to be disturbed on appeal absent an abuse of discretion. State v. Cashen, 544 So.2d *723 1268 (La.App. 4 Cir.1989). There was no abuse of discretion, and this assignment is without merit.
ASSIGNMENT OF ERROR NUMBER 2
In this assignment, the defendant suggests that his convictions for forcible rape and sexual battery violate his right against double jeopardy.
Both the Fifth Amendment to the United States Constitution and Article 1 § 15 of the Louisiana Constitution guarantee that no person shall be twice placed in jeopardy for the same offense. The purpose of these provisions is to protect a person from a second prosecution after he has already been acquitted or convicted of that offense and also to protect an accused against multiple punishment for the same conduct. State v. Vaughn, 431 So.2d 763 (La.1983).
| inLouisiana uses both the “Blockburger test” and the “same evidence test” in determining whether double jeopardy exists. La.C.Cr.P. art. 596; State v. Vaughn, supra. In Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the United States Supreme Court held that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.
The “same evidence” test is a “broader test” than the federal Blockburger test. It was explained in State v. Steele, 387 So.2d 1175, 1177 (La.1980):
If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one.
The test depends on the evidence necessary for conviction, not all the evidence introduced at trial ...
In this case the defendant argues that the two charges do not meet either the Blockburger or the “same evidence” tests because: (1) sexual battery is a responsive verdict to forcible rape under La.C.Cr.P. art. 814, and (2) sexual battery requires the non-consensual touching of the anus or genitals of the victim using any part of the offender’s body — something that would occur during forcible rape.
Louisiana Revised Statute 14:43.1 defines sexual battery, in pertinent part, as the intentional touching of the genitals of a person using any instrumentality or body part of the offender, without the consent of the victim.
Forcible rape is rape committed when the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because Inthe victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape. La. R.S. 14:42.1 A(l).
In State v. Baker, 34,973, p. 16-17 (La.App. 2 Cir. 9/26/01), 796 So.2d 145, 156, the Second Circuit observed:
... Indeed, as pointed out by the Dorsey [State v. Dorsey, 30-683 (La.App. 2 Cir.06/24/98), 718 So.2d 466] court, in many cases of forcible rape, evidence of sexual battery (or other offenses) may indeed exist and be relevant to show the procession of the defendant’s acts toward his goal of rape while not negating the existence of the intent to rape. Thus, in any given case of forcible rape, rather than being a defense to the forcible rape, defendant may in fact also be guilty of sexual battery ... during the series of events leading *724 up to the charged offense. (Emphasis supplied)
In State v. Duet, 95,2446, p. 5 (La.App. 1 Cir. 11/8/96), 684 So.2d 64, 67, the Second Circuit further explained the issue:
... the elements of a sexual battery are always included in the elements of a rape; i.e., every time a rape is committed, a sexual battery has also been committed. However, the converse is not true; a sexual battery can be committed without the offense falling within the definition of rape.
In the instant case, the same evidence was not necessary for a conviction of both crimes because the crime of sexual battery was completed prior to the rape. The second time the victim said no to the defendant’s digital penetration, the defendant became enraged, began to choke the victim and threatened her life. The rape was the consequence of the victim’s rebuffing the defendant’s sexual advances. This assignment is without merit.
ASSIGNMENT OF ERROR NUMBER 3
In his third assignment of error the defendant contends that the ten-year sentence imposed on the sexual battery conviction is excessive as 11 ¡.applied to him and that the sentence, although within the statutory limits, is a manifest abuse of discretion by the trial judge.
Article 1, Section 20 of the Louisiana Constitution of 1974 provides that “[n]o law shall subject any person ... to cruel, excessive or unusual punishment.” A sentence within the statutory limit is constitutionally excessive if it is “grossly out of proportion to the severity of the crime” or is “nothing more than the purposeless imposition of pain and suffering.” State v. Caston, 477 So.2d 868, 871 (La.App. 4 Cir.1985).
Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982). If adequate compliance with La. C.Cr.P. art. 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Guajardo, 428 So.2d 468, 473 (La.1983); State v. Quebedeaux, Id.
When the trial judge fails to sufficiently set forth the factors considered in the imposition of the sentence, there is no need to remand the matter for re-sentencing if the record clearly shows an adequate factual basis, which supports the sentence imposed. State v. Welch, 550 So.2d 265, 266 (La.App. 4 Cir.1989).
In the instant case, the trial judge ordered a pre-sentence investigation. The report documented two convictions for the offense of simple battery, and an arrest for sexual assault and kidnapping of a seventeen-year old Lsfemale. The report also noted that the defendant was ineligible for supervised probation because of the nature of these offenses.
In sentencing the defendant the trial judge reasoned:
From everything [the State] brought out, I believe ... it looked as though you were attempting to bring her from the area where she was in town to the Hilton right down the street from here to the Tulane and Galvez area. It seems you were doing it for your own satisfaction.
*725 ... there came a point when she said, no, that that was as far as she was going to go ... I guess it’s like they say: no means no. It’s a point when she says, stop, you’ve got to stop.
... I do believe based upon everything I heard that you did force yourself upon her, that you forced yourself upon her in a physical fashion, a sexual fashion, that you sexually abused her. Not only did you touch her sexually with your hands or your fingers. I believe that you did rape her.
... I am convinced based upon the testimony of the complaining witness and listening and evaluating your testimony that you did commit the act of forcible rape against this person ...
It is worth noting that the trial judge in this case ordered the sentences herein to run concurrently, rather than consecutively, to the defendant’s benefit.
In State v. Badeaux, 01-406 (La.App. 5 Cir. 9/25/01), 798 So.2d 234, the Fifth Circuit affirmed the maximum sentence for sexual battery even though the defendant had no prior felony convictions. Furthermore, the court in Badeaux ordered that the sentences be served consecutively. Considering the defendant’s past criminal history and the physical and psychological trauma suffered by the victim in this case, the trial court did not abuse its sentencing discretion. The sentence is not excessive, and this assignment is without merit.

CONCLUSION

| 14For the reasons cited above, we affirm the convictions and sentences for forcible rape and sexual battery.
AFFIRMED.

. Because of the nature of the offense, only the victim’s initials will be used for identification.

. 1999 La. Acts 94, effective August 15, 1999, embodied La. R.S. 15:301.1 which provides:
A. When a criminal statute requires that all or a portion of a sentence imposed for a *721 violation of that statute be served without benefit of probation, parole, or suspension of sentence, each sentence which is imposed under the provisions of that statute shall be deemed to contain the provisions relating to the service of that sentence without benefit of probation, parole, or suspension of sentence. The failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of probation, parole, or suspension of sentence shall not in any way affect the statutory requirement that all or a portion of the sentence be served without benefit of probation, parole, or suspension of sentence.
B.If a sentence is inconsistent with statutory provisions, upon the court’s own motion or motion of the district attorney, the sentencing court shall amend the sentence to conform to the applicable statutory provisions. The district attorney shall have standing to seek appellate or supervisory relief for the purpose of amending the sentence as provided in this Section.
C. The provisions of this Section shall apply to each provision of law which requires all or a portion of a criminal sentence to be served without benefit of probation, parole, or suspension of sentence, or of any one of them, any combination thereof, or any substantially similar provision or combination of substantially similar provisions.
D. Any amendment to any criminal sentence as authorized by the provisions of this Section shall be completed within one hundred eighty days of the initial sentencing.